FARBENFABRIKEN BAYER, A. G., a corporation, Plaintiff,

v.

STERLING DRUG, Inc., a corporation, Defendant.

Civ. No. 909-55.

United States District Court
D. New Jersey.

Feb. 5, 1957.

2. 45 U.S.C.A. § 56.

See, also, D.C., 148 F.Supp. 738.

del & Ohl, Rogers, Hoge & Hills, New York City, for defendant.

WILLIAM F. SMITH, District Judge.

The plaintiff in this action, a corporation organized under the laws of Germany, was formerly an enemy alien within the meaning of Section 2(a) of the Trading with the Enemy Act of 1917, 50 U.S.C.A.Appendix, § 2(a). The complaint is in four counts, each of which states a separate and distinct claim: first, a claim for profits allegedly due under a contract; second, a claim to property held by the defendant; third, and in the alternative, a claim for damages for breach of contract; and fourth, a claim based upon a breach of trust. The respective claims, according to the allegations of the complaint, are predicated on an alleged breach of contract which occurred in 1941, or shortly thereafter, and prior to January 1, 1947. The exact date of the alleged breach of contract is unimportant. The claims, although not seized, were subject to seizure and vesting under the Act.

The defendant filed an answer in which it is alleged, as an affirmative defense, that the plaintiff has no right to "institute or maintain" the action. The defense rests solely upon an express limitation in House Joint Resolution No. 289 65 Stat. 451, approved October 19, 1951, 50 U.S.C.A.Appendix, p. XX, preceding section 1. The defense is raised at this time on the dual motion of the defendant, to wit, a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A., and a motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The Joint Resolution, supra, is determinative of the issue raised by the defendant. The Resolution reads as follows:

"* * *, That the state of war declared to exist between the United States and the Government of Germany by the joint resolution of Congress approved December 11, 1941,

Arnold, Fortas & Porter, Washington, D. C., Alexander T. Schenck, Newark, N. J., for plaintiff.

O'Mara, Schumann, Davis & Lynch, Jersey City, N. J., Cahill, Gordon, Rein-

is hereby terminated and such termination shall take effect on the date of enactment of this resolution: Provided, however, That notwithstanding this resolution and any proclamation issued by the President pursuant thereto, *any property or interest which prior to January 1, 1947, was subject to vesting or seizure under the provisions of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as* amended, or which has heretofore been vested or seized under that Act, including accruals to or proceeds of any such property or interest, *shall continue to be subject to the provisions of that Act in the same manner and to the same extent as if this resolution had not been adopted* and such proclamation had not been issued. Nothing herein and nothing in such proclamation shall alter the status, as it existed immediately prior thereto, under that Act of Germany or of any person with respect to any such property or interest." (Emphasis by the Court.)

The Joint Resolution by its express terms reserved the right of the United States to seize property which was "subject to vesting or seizure under the provisions of the Trading with the Enemy Act" prior to January 1, 1947.

The force and effect of the Joint Resolution is fully discussed in the excellent opinion by Judge Swaim in the case of Ladue & Co. v. Brownell, 7 Cir., 220 F. 2d 468, certiorari denied 350 U.S. 823, 76 S.Ct. 50, 100 L.Ed. 736. It is therein stated, 220 F.2d at page 471: " * * * the Joint Resolution which officially terminated the war with Germany expressly reserved and extended the power of the United States to seize for its own use all property located in the United States which prior to January 1, 1947, *was subject to vesting or seizure* under the Trading with the Enemy Act, and which was owned by nationals of Germany. The reservation of this power was an integral part of formally bringing the war to a close. Cessation of hostilities between

the United States and Germany had occurred with the unconditional surrender of Germany on May 8, 1945. From that date to October 19, 1951, when the Joint Resolution was approved, only a technical state of war had existed between the United States and Germany. During that period of more than six years the Government had continued to seize property in this country belonging to German nationals." (Emphasis by the Court.)

It is further stated, 220 F.2d at page 471: "In the reservation of the power to seize the property of German nationals Congress may have had in mind that such seizures would tend to serve as a deterrent to a third war with Germany, but it is certain from the Legislative History of the Joint Resolution, * * *, that the proceeds of the property seized were to be used to remedy the evils which had arisen from the war; that the proceeds of the seized property were to be used to pay the just and legitimate claims against the United States arising from the war in accordance with the War Claims Act of 1948 [50 U.S.C.A.Appendix, § 2001 et seq.]. Seizure of the property of enemy aliens for this purpose was clearly a proper exercise of the war powers."

There can be no doubt that as to property which "was subject to vesting or seizure" prior to January 1, 1947, the right of the United States was preserved and the enemy status of a German corporation was continued, notwithstanding the termination of the state of war. The disqualification incident to the enemy status of a German corporation was likewise continued. It is well established that a nonresident enemy alien, until the disqualification is lifted by a treaty of peace or otherwise, may not invoke the jurisdiction of the Court. Johnson v. Eisentrager, 339 U.S. 763, 776, 70 S.Ct. 936, 94 L.Ed. 1255; Ex parte Colonna, 314 U.S. 510, 511, 62 S.Ct. 373, 86 L.Ed. 379; Sec. 7(b) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 7 (b). This principle applies to a corporation organized under the laws of an enemy state.

■■ We are of the opinion that a German corporation may not prosecute an action to enforce a right of property which is subject to seizure by the Alien Property Custodian under the provisions of the Trading with the Enemy Act, at least until the right of seizure is definitely terminated by law. It follows that the plaintiff may not maintain the instant suit at this time.

The plaintiff argues that the proviso contained in the Joint Resolution was abrogated by "the events" which followed the approval of the said Resolution. We have carefully examined the documents upon which the plaintiff relies and we are of the opinion that the argument is without merit. We find nothing in these documents inconsistent with the proviso contained in the Joint Resolution. We therefore make only brief reference to these documents.

■ We must be guided in our interpretation of these documents by a fundamental principle of construction. It is well established that repeals "by implication are never favored, and a later treaty will not be regarded as repealing an earlier statute by implication unless the two are absolutely incompatible and the statute cannot be enforced without antagonizing the treaty." Johnson v. Browne, 205 U.S. 309, 321, 27 S.Ct. 539, 542, 51 L.Ed. 816; see also United States v. Lee Yen Tai, 185 U.S. 213, 22 S.Ct. 629, 46 L.Ed. 878; Whitney v. Robertson, 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386. A joint resolution regularly adopted and approved has the force and effect of a statute.

The plaintiff relies firstly, on the "Treaty of Friendship, Commerce and Consular Rights," ratified on July 21, 1953 and concluded on November 5, 1954. This treaty makes applicable, "as a provisional measure pending the conclusion of a more comprehensive" treaty, the "Treaty of Friendship, Commerce and Consular Rights," concluded on December 8, 1923, 44 Stat. 2132.

■ The pertinent provision of Article I of the latter treaty reads as follows: "The nationals of each High Contracting Party shall enjoin freedom of access to the courts of justice of the other on conforming to the local laws, as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law." This provision cannot be construed as a repeal of the Joint Resolution. The language reads in futuro and is consistent with the right preserved under the Joint. Resolution, to wit, the right to seize and vest property subject to seizure and vesting prior to January 1, 1947.

■ The plaintiff relies secondly on the "Treaty of Friendship, Commerce and Navigation with the Federal Republic of Germany," signed on October 29, 1954 and ratified on July 27, 1955. The pertinent provision of Article VI of this treaty reads as follows: "Nationals and companies of either Party shall be accorded national treatment with respect to access to the courts of justice * * * within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights." This provision, like the provision contained in the earlier treaty, cannot be construed as a repeal of the Joint Resolution. The language, as in the earlier treaty, reads in futuro and is consistent with the right preserved under the Joint Resolution.

■ The plaintiff relies finally on the "Bonn Occupation Agreements" of May 26, 1952 as amended by the "Paris Protocol" of October 23, 1954. There is nothing in these agreements which may be construed as a repeal of the Joint Resolution. It is to be noted that Article 3, paragraph 1, of the "Convention on the Settlement of Matters Arising out of the War and the Occupation" impliedly, if not expressly, recognizes the right reserved under the said Resolution. The pertinent language reads as follows: "The Federal Republic (of Germany) shall in the future raise no objections against the measures which have been, or will be, carried out with regard to German external assets or other property, seized for the purpose of repara-

738

tion or restitution, or as a result of a state of war, \* \* \*."

 It does not follow, however, that the defendant is entitled to prevail on the present motion. A judgment under either Rule 12(c) or Rule 56(b) is essentially a judgment on the merits and may be entered only upon a conclusive determination of the issues of law. The only relief to which the defendant is entitled at this time is a dismissal of the action without prejudice; if and when the disqualification incident to the enemy status of the plaintiff is lifted, either by treaty or otherwise, the plaintiff may have a right to maintain its action in a court of competent jurisdiction.

The motion for judgment will be denied. The present action, however, will be dismissed, without prejudice to the right of the plaintiff to institute and maintain a new action when the disqualification is lifted.